STATE BANK OF BROOTEN,
Respondent,

v.

AMERICAN NATIONAL BANK OF
LITTLE FALLS, Appellant.

No. 47683.

Supreme Court of Minnesota.

April 14, 1978.

Rehearing Denied May 31, 1978.

**497**

Gordon Rosenmeier and John E. Simonett, Little Falls, for appellant.

Frauenshuh & Fahlberg and Robert D. Stoneburner, Paynesville, for respondent.

Heard before SHERAN, C. J., and SCOTT and WAHL, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from an order of the district court denying defendant's motion for a new trial in an action brought by State Bank of Brooten (State Bank) against American National Bank of Little Falls (American) to determine American's liability on a bank money order issued by American to State Bank, the payee. We reverse.

In 1974, Steve Radloff purchased an irrigation system from Bonanza Valley Sales and Irrigation, Inc. (Bonanza). Radloff promised to pay the sales price of approximately $100,000 upon delivery. After the system was installed and part payment had been made, Radloff complained about certain defects in the equipment. In July 1975, Radloff stated that he would make a payment on the contract if the equipment was repaired. Earl Getschel, Bonanza's chief executive officer, believed that Radloff's complaints were justified and promised to repair the equipment if Radloff made part payment in the amount of $10,000. Radloff mailed a $10,000 check dated August 1, 1975, to Bonanza. The check was drawn on Radloff's account with American and was payable to Bonanza and Welte Enterprises.

Bonanza received the check on Saturday, August 2. On Monday, August 4, Getschel telephoned American and was told that Radloff's account contained insufficient funds to cover the check. American's records, however, show that the account did contain adequate funds on that date. On the next day, Getschel was advised upon telephone request that sufficient funds were in Radloff's account.

Upon receipt of this information, Getschel drove from Brooten, Minnesota, to Little Falls, Minnesota, to cash the check at American. He made the 70-mile trip because he wanted to present the check while funds were available. About 3 p. m. on Tuesday, August 5, Getschel presented the Radloff check, endorsed by both payees, to one of American's tellers and asked the teller for a $10,000 money order payable to State Bank. The money order was issued designating Getschel as the remitter and State Bank as the payee. The instrument was signed by American's assistant vice president and cashier, William Johnson, and was a standard bank money order.

At the time Johnson signed the money order, he did not know that Radloff had stopped payment on the check at 9 a. m. the same day. Due to a malfunction of a computer, Johnson did not learn of the stop payment order until Thursday, August 7, at which time he immediately called State Bank to inform it of the situation.

Getschel also did not know of the stop payment order at the time he presented Radloff's check to American but learned of the fact when he visited Radloff on the same day. Getschel testified, however, that he did not believe Radloff's statement that he had stopped payment.

On the following morning, Wednesday, August 6, Getschel took the money order to State Bank and asked Glenn D. Heitzman, the executive vice president and managing officer of State Bank, to apply the $10,000 money order to a loan given by State Bank to Bonanza. The loan had been used by Bonanza to finance the equipment sold to Radloff. As security for the loan, Bonanza had assigned to State Bank the security interest it had reserved in the equipment sold to Radloff. Getschel had discussed the Radloff check with State Bank, and the bank knew he intended to apply the proceeds of that check to Bonanza's obligation at State Bank.

When Getschel delivered the money order to State Bank, he did not mention that Radloff had told him that he had stopped payment on the check. Upon receipt of the money order, Heitzman endorsed it and noted on the back of it that it applied to Bonanza's indebtedness with State Bank. State Bank made the necessary credit entries on the loan ledger and endorsed a $10,000 payment credit on Bonanza's note reducing the principal amount of the loan by $10,000. Heitzman then placed the money order into "the usual channels for collection." This transaction was completed on August 6. On the following day, State Bank was notified by Johnson that American would refuse payment because of Radloff's stop payment order.

The money order was returned to State Bank with "PAYMENT STOPPED" stamped on it. Heitzman advised Getschel of the situation and reversed the loan credit entries, thus returning the principal balance to the original amount. The reversal of entries was the usual procedure followed by State Bank when instruments were not paid upon presentation. Getschel acquiesced to the reversal of these entries, and Bonanza brought an action, separate

from the case at hand, against Radloff. This related action was compromised and settled.

State Bank brought the present action against American, seeking $10,000 in damages for the alleged wrongful stopping of payment on the bank money order. On a stipulated set of facts, the district court ordered judgment in favor of State Bank, holding that the payment of the money order in exchange for Radloff's check was a final payment and that State Bank was a holder in due course of the money order.

■ The crucial issue on appeal is whether State Bank "gave value" so as to qualify as a holder in due course pursuant to the Uniform Commercial Code.[1]

American contends that the consideration paid for the money order failed because Radloff stopped payment on his check. The defense of failure of consideration "is a defense as against any person not having the rights of a holder in due course * * *." Minn.St. 336.3–408. Thus, "[u]nless he has the rights of a holder in due course any person takes the instrument subject to * * (c) the defenses of want or failure of consideration * * *." Minn.St. 336.3–306. Section 336.3–302(1) defines "holder in due course" as—

"* * * a holder who takes the instrument

"(a) for *value;* and

"(b) in good faith; and

"(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." (Italics supplied.)

State Bank, on the other hand, contends that a bank may not stop payment on its own obligation, such as a bank money order. The Uniform Commercial Code is silent on this issue, and the cases decided under it reach conflicting results. State Bank relies

---

1. American also claims that State Bank is not a holder in due course because State Bank is not a "holder" of an instrument which contains an order to pay which identifies the drawer with reasonable certainty. State Bank was in possession of a money order drawn to its order and is therefore a "holder." Minn.St. 336.1–

201(20). In addition, the words "Pay to the order of" which appeared on the money order constitute an "order to pay," § 336.3–104(1)(b), and the drawee who is obligated to pay is sufficiently designated on the instrument as American National Bank, the issuer. Minn.St. 336.3–102(1)(b).

upon *Thompson Poultry, Inc. v. First Nat. Bank of York,* 199 Neb. 8, 255 N.W.2d 856 (1977), in which the Nebraska Supreme Court held that a bank money order is "accepted in advance by the act of issuance" and "is not subject to countermand by either its purchaser or the issuing bank." 199 Neb. 9, 255 N.W.2d 858. The court in *Thompson Poultry,* however, apparently conditioned this rule upon the giving of adequate consideration for the money order, since the court went on to state that "[a] bank money order, *purchased for adequate consideration,* unlike an ordinary check, stands on its own foundation as an independent unconditional, and primary obligation of the bank." Ibid. (Italics supplied.) The Nebraska Supreme Court found adequate consideration had been given since in a request for admissions it was admitted that "cash or other valuable consideration" was received at the time the money order was issued. Ibid.

■ We choose not to follow the rule in *Thompson Poultry* and adopt the rule set forth in *TPO Inc. v. Federal Deposit Ins. Corp.,* 487 F.2d 131 (3 Cir. 1973), that a bank may stop payment on its own obligation if the obligation is in the hands of one who is *not* a holder in due course. The court stated (487 F.2d 136):

> "In any event, while a cashier's check is equivalent to a negotiable promissory note of a bank, it is not the same as cash as has been loosely asserted, and the cases discussing this particular type of instrument must be carefully analyzed. It is important, also, to note that discussions about a *customer's* right to stop payment on a check under § 4–403 are not helpful but only tend to confuse the issue presented here.
>
> \*   \*   \*   \*   \*   \*
>
> "We think that a correct analysis of the position of the parties here is that the Bank had engaged to pay the check *but, if the plaintiff is not a holder in due course, under § 3–306 and § 3–408 the Bank   \*   \*   \*   is entitled to present all defenses which would be available on a simple contract including one of lack of*

*consideration or fraud."* (Italics supplied in part.)

This view is consistent with the following statement of pre-Code law contained in Bailey, Brady on Bank Checks (4 ed.), § 13.7:

> "\*   \*   \*   And it has been held that a bank issuing a cashier's check in exchange for a worthless check might properly refuse payment because of failure of consideration, where the cashier's check was still in the hands of the original payee *who was not a holder in due course."* (Italics supplied.)

See, also, *Dakota Transfer & Storage Co. v. Merchants Nat. Bank & Trust Co.,* 86 N.W.2d 639 (N.D.1957). Thus, American's ability both to assert the defense of failure of consideration and to stop payment depends upon whether State Bank is a holder in due course of the money order.

■ With respect to the holder-in-due-course issue, American contends that no "value" was given for the money order. The district court held that State Bank gave "value" for the money order within the meaning of § 336.3–303 because State Bank "credited the money to the loan that Bonanza had with it." Section 336.3–303 provides in part:

> "A holder takes the instrument for value
>
> \*       \*       \*       \*       \*       \*
>
> "(b) when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due   \*   \*   \*."

American, however, asserts that the district court applied the wrong definition of "value" and that it should have applied the Article 4 definition, contained in § 336.4–209, which provides:

> "For purposes of determining its status as a holder in due course, the bank has given value to the extent that it has a security interest in an item provided that the bank otherwise complies with the requirements of section 336.3–302 on what constitutes a holder in due course."

American's argument is based on the assumption that State Bank is acting in its

capacity as a "collecting bank" subject to the provisions of Article 4. Article 4, however, is not applicable to this case. In 21B M.S.A. § 336.4–105, U.C.C. Comment 1, the drafters of the Uniform Commercial Code considered the situation where a bank is given a check made payable to it in payment of a mortgage. The drafters concluded that "[s]uch a bank has the status of a payee under Article 3 on Commercial Paper and *not that of a collecting bank.*" (Italics supplied.) The Comment also provides that the Article 4 definitions "in general exclude a bank to which an item is issued * * *."

The case at hand is directly in point with the conclusion reached in the U.C.C. Comment. When State Bank first received the money order from Getschel, it was not handling the instrument for collection. Instead, it was handling the instrument in its capacity as the payee of the money order. Only later did it use its own banking channels for collection of the item. Thus, at the time State Bank initially received the instrument its relationship to the money order was that of a payee and not that of a "collecting bank." State Bank consequently should be treated the same as any other payee and the provisions of Article 4 have no bearing on this case. See, 3 Anderson, Uniform Commercial Code (3 ed.) § 4–102:7.

■■■ The only issue, therefore, is whether the district court correctly applied the definition of "value" contained in § 336.3–303(b). The district court held that "value" had been given because State Bank reduced Bonanza's loan obligation by an amount equal to the face amount of the money order. In the recent case of *Leininger v. Anderson,* Minn., 255 N.W.2d 22, 27 (1977), we stated that the application of cashier's checks to satisfy certain obligations constituted "value" within the meaning of § 336.3–303(b). Normally, the receipt of a bank obligation, such as a money order, operates as a pro tanto discharge of the underlying obligation. Section 336.3–802(1)(a) provides as follows:

"(1) Unless *otherwise agreed* where an instrument is taken for an underlying obligation

"(a) the obligation is pro tanto discharged if a bank is drawer * * * of the instrument and there is no recourse on the instrument against the underlying obligor * * *." (Italics supplied.)

Thus, pursuant to § 336.3–802(1)(a), Bonanza could have insisted that State Bank finalize the credits it had entered with respect to Bonanza's loan upon receipt of the instrument on which American was the drawer; however, Bonanza did not do so. Instead, Bonanza "otherwise agreed" to the reversal of the credit entries when the money order was returned to State Bank unpaid. Throughout the transaction between State Bank and Bonanza relating to the money order, State Bank's initial entries on its records (which reduced the loan amount payable) were treated as provisional or conditional entries and were intended to be finalized only upon payment of the money order by American, as the actions of State Bank and Bonanza establish. The present case is therefore distinguishable from *Leininger.*

In *Wilson Supply Co. v. West Artesia Transmission Co.,* 505 S.W.2d 312 (Tex.Ct. App.), affirmed, 511 S.W.2d 261 (Tex.1974), Texas courts confronted the issue of whether a check was accepted as a payment of an antecedent claim and thus constituted value under Tex.Bus. & Com. § 3.303. The Court of Civil Appeals of Texas held:

"* * * The obvious intent to limit the holder only to the extent that the agreed consideration is actually given would be substantially nullified if only conditional satisfaction of the antecedent debt is required to make one a holder for value. Actual payment was required in the only case we have found wherein the statutory change made by the Uniform Commercial Code was considered. See *Halbert v. Horton,* 29 Mich.App. 208, 185 N.W.2d 76 (1970)." 505 S.W.2d 314.

On appeal, the Texas Supreme Court upheld the lower court's decision, which it characterized as follows:

"* * * The Court of Civil Appeals held, with one justice dissenting, that one who thus accepts a check conditionally in

satisfaction of part or all of a preexisting claim is not a holder in due course within the meaning of § 3.303 of the Uniform Commercial Code, V.T.C.A." 511 S.W.2d 262.

State Bank, therefore, gave nothing for the money order. It reversed the credit entries on the Bonanza loan with Bonanza's acquiescence, with the result that State Bank's records after the reversal of entries show exactly the same balances as those records showed before receipt of the money order.

Thus, upon the particular facts of this case, we hold that State Bank is not a holder in due course because it gave no "value" within the meaning of § 336.3–303. American therefore was entitled to stop payment on the money order, and the defense of failure of consideration is available to American on remand.

Reversed and remanded.

ROGOSHESKE and TODD, JJ., took no part in the consideration or decision of this case.